# IN THE UNITED STATES DISTRICT COURT
# FOR THE EASTERN DISTRICT OF OKLAHOMA

TONI M. CONWAY, )
)
       **Plaintiff,** )
)
v. ) Case No. CIV-13-66-SPS
)
CAROLYN W. COLVIN, )
Acting Commissioner of the Social )
Security Administration,[1] )
)
       **Defendant.** )

## OPINION AND ORDER

The claimant Toni M. Conway requests judicial review of a denial of benefits by the Commissioner of the Social Security Administration pursuant to 42 U.S.C. § 405(g). She appeals the Commissioner's decision and asserts that the Administrative Law Judge ("ALJ") erred in determining she was not disabled. For the reasons discussed below, the Commissioner's decision is hereby REVERSED and the case REMANDED to the ALJ for further proceedings.

### Social Security Law and Standard of Review

Disability under the Social Security Act is defined as the "inability to engage in any substantial gainful activity by reason of any medically determinable physical or mental impairment[.]" 42 U.S.C. § 423(d)(1)(A). A claimant is disabled under the Social Security Act "only if h[er] physical or mental impairment or impairments are of

---

[1] On February 14, 2013, Carolyn W. Colvin became the Acting Commissioner of Social Security. In accordance with Fed. R. Civ. P. 25(d), Ms. Colvin is substituted for Michael J. Astrue as the Defendant in this action.

such severity that [s]he is not only unable to do h[er] previous work but cannot, considering h[er] age, education, and work experience, engage in any other kind of substantial gainful work which exists in the national economy[.]" *Id*. § 423 (d)(2)(A). Social security regulations implement a five-step sequential process to evaluate a disability claim. *See* 20 C.F.R. §§ 404.1520, 416.920.[2]

Section 405(g) limits the scope of judicial review of the Commissioner's decision to two inquiries: whether the decision was supported by substantial evidence and whether correct legal standards were applied. *See Hawkins v. Chater*, 113 F.3d 1162, 1164 (10th Cir. 1997). Substantial evidence is "'more than a mere scintilla. It means such relevant evidence as a reasonable mind might accept as adequate to support a conclusion.'" *Richardson v. Perales*, 402 U.S. 389, 401 (1971), *quoting Consolidated Edison Co. v. NLRB*, 305 U.S. 197, 229 (1938); *see also Clifton v. Chater*, 79 F.3d 1007, 1009 (10th Cir. 1996). The Court may not reweigh the evidence or substitute its discretion for the Commissioner's. *See Casias v. Secretary of Health & Human Services*, 933 F.2d 799, 800 (10th Cir. 1991). But the Court must review the record as a whole, and "[t]he

---

[2] Step one requires the claimant to establish that she is not engaged in substantial gainful activity. Step two requires the claimant to establish that she has a medically severe impairment (or combination of impairments) that significantly limits her ability to do basic work activities. If the claimant *is* engaged in substantial gainful activity, or her impairment *is not* medically severe, disability benefits are denied. If she *does* have a medically severe impairment, it is measured at step three against the listed impairments in 20 C.F.R. Part 404, Subpt. P, App. 1. If the claimant has a listed (or "medically equivalent") impairment, she is regarded as disabled and awarded benefits without further inquiry. Otherwise, the evaluation proceeds to step four, where the claimant must show that she lacks the residual functional capacity ("RFC") to return to her past relevant work. At step five, the burden shifts to the Commissioner to show there is significant work in the national economy that the claimant *can* perform, given her age, education, work experience, and RFC. Disability benefits are denied if the claimant can return to any of her past relevant work or if her RFC does not preclude alternative work. *See generally Williams v. Bowen*, 844 F.2d 748, 750-51 (10th Cir. 1988).

substantiality of evidence must take into account whatever in the record fairly detracts from its weight." *Universal Camera Corp. v. NLRB*, 340 U.S. 474, 488 (1951); *see also Casias*, 933 F.2d at 800-01.

**Claimant's Background**

The claimant was born August 19, 1965, and was forty-five years old at the most recent administrative hearing (Tr. 104). She completed her Associate's Degree in business data processing, and has worked as a real estate abstractor (Tr. 44, 104). The claimant alleged that she has been unable to work since September 30, 2007, due to a bulging torn disc in her neck, severe headaches, and depression (Tr. 242).

**Procedural History**

On June 18, 2009, the claimant applied for disability insurance benefits under Title II of the Social Security Act, 42 U.S.C. §§ 401-434. Her application was denied. ALJ Gene M. Kelly conducted an administrative hearing and determined that the claimant was not disabled in a written opinion dated March 31, 2011 (Tr. 132-140), but he vacated that opinion and ordered a supplemental hearing after he learned of a fact not known at the time of the decision (Tr. 145). ALJ Kelly then held a second administrative hearing and again determined that the claimant was not disabled in a written opinion dated September 16, 2011 (Tr. 21-34). The Appeals Council denied review, so the latter opinion is the Commissioner's final decision for purposes of this appeal. *See* 20 C.F.R. § 404.981.

**Decision of the Administrative Law Judge**

The ALJ made his decision at step five of the sequential evaluation. He found that the claimant had the residual functional capacity ("RFC") to perform a limited range of

light work as defined in 20 C.F.R. § 416.967(b), *i. e.*, she could lift/carry 20 pounds occasionally, stand/walk six hours in thirty-minute intervals in an eight-hour workday, and sit for six hours in an eight-hour workday at one-hour intervals. Additionally, the ALJ found that the claimant had slight restrictions on bending and stooping; that she could only occasionally squat, climb, kneel, crouch, or crawl; that her capacity for pushing/pulling with the left upper extremity was limited; that she could reach over her shoulders with her left and right upper extremities, twist, and nod her head only occasionally; and that she had slight limitations in the ability to finger, feel, and grip. He further found that she needed easy access to restrooms. He imposed the psychologically-based limitations of limited contact with the public, co-workers, and supervisors; that her work should be simple, repetitive, and routine; that if she were on an assembly line, she must be granted ample room and not be expected to interact socially. The ALJ noted that the claimant experienced mild to moderate pain that would be noticeable to her at all times, but that she would nevertheless be able to remain attentive and responsive in a work setting and could satisfactorily carry out work assignments. Finally, he noted that she takes medications for symptom relief, but that her medications would not prevent her from performing work at this RFC and remaining reasonably alert (Tr. 26). The ALJ then concluded that although the claimant could not return to her past relevant work, she was nevertheless not disabled because there was work in the regional and national economy that she could perform, *i. e.*, bench assembler, card assembler, and clerical mailer (Tr. 34).

## Review

The claimant contends that the ALJ erred: (i) by failing to properly weigh the opinion of her neurologist, Dr. Jorge Gonzalez; (ii) by failing to properly assess her RFC, in particular failing to find limitations related to bladder impairments and headaches; (iii) by finding there was work she could perform; and (iv) by failing to properly evaluate her credibility. The Court finds the claimant's fourth dispositive, *i. e.*, the ALJ failed to properly evaluate the claimant's credibility, and the decision of the Commissioner must therefore be reversed and the case remanded for further proceedings.

The ALJ found that the claimant had the severe impairments of neck, headaches, bladder, kidney, left shoulder, left arm, hands, depression, anxiety, and pain disorder (Tr. 23). As relevant to this appeal, the medical evidence reveals that the claimant had C3-C6 annular disk tears, which Dr. Gonzalez found to be a likely pain generator for the claimant's neck pain (Tr. 366). She received a number of trigger point injections to treat this pain (Tr. 376-381, 489-502, 610-617, 639-642). She underwent a cervical disc fusion at C3-4, 4-5, and 5-6 in February 2010, and went through physical therapy for evaluation and intervention related to cervical degenerative disc disease (Tr. 562-568).

As to her mental impairments, the claimant's treating physician prescribed her anti-depressant medications, and consistently noted depression as one of her diagnoses (Tr. 385-457). Additionally, consultative examiner Denise LeGrand, Ph.D., performed mental status/diagnostic exams of the claimant on December 3, 2009 and in January 2011 (Tr. 518-523, 589-595). In 2009, Dr. LeGrand provided a differential diagnosis of major depressive disorder moderate, and pain disorder due to general medical condition, and

assigned the claimant a Global Assessment of Functioning (GAF) score of 50 (Tr. 521). Dr. LeGrand also stated in her assessment, "From a psychological standpoint, based on her reported symptoms, history, and performance on this exam, her ability to perform adequately in most job situations, handle the stress of a work setting and deal with supervisors or co-workers is estimated to be low average" (Tr. 522). At the January 2011 exam, Dr. LeGrand administered, *inter alia*, the Wechsler Memory Scale and the Wide-Range Achievement Test – Third Edition (WRAT-III). She provided the same differential diagnosis as she had in 2009, including the GAF score of 50 (Tr. 594). She found that the claimant's judgment was estimated to be "adequate," "[b]ased on her overall cognitive level, her ability to think abstractly, and her ability to function appropriately socially and emotionally" (Tr. 595). She noted, however, that the claimant had mild to moderate impairments in other activities of daily living, the ability to adapt/cope with a low-demand, entry-level job, and the ability to handle the stress of a work environment (Tr. 594-595). At both assessments, she stated that the claimant's condition was not likely to improve significantly in the next 12 months (Tr. 522, 595). In January 2010, Dr. David Hansen conducted a neuropsychological evaluation of the claimant, and conducted a battery of tests. Related to her personality/emotional functioning, Dr. Hansen stated that the claimant reported "symptoms that suggest an interplay between emotional and physiological functioning. It is not uncommon for individuals with chronic pain conditions to experience a cyclic exacerbating relationship between their pain and symptoms of depression. It does appear that Ms. Conway is experiencing such a cyclic relationship with each condition exacerbating the other," but

he also noted that the claimant endorsed a high percentage of perceived disability (Tr. 572). His diagnosis included major depression recurrent and of moderate severity, pain disorder with psychological and physiological features, as well as headaches, cervical spine pain, and tobaccoism (Tr. 572).

At the administrative hearings, the claimant testified as to her listed impairments (Tr. 47-50). She testified that she used to knit, but that she can no longer do so because of the pain in her neck and arms (Tr. 52-53). In explanation, she stated that her fingers will go numb after about fifteen minutes of use, that the pain spreads to her left shoulder as well, and that she was not able to knit, crochet, or scrapbook anymore (Tr. 53-54, 62-63). She further testified that she could not change out a light bulb overhead with her left hand because she cannot hold it up that long (Tr. 55). She stated that she has to make lists because she has difficulty remembering things and appointments (Tr. 58). She also testified that her medications cause drowsiness (Tr. 59-60). As to her neck, she stated that she cannot look down and has to compensate by tilting her body forward do see (Tr. 68). Her mother also testified, stating that she sees her daughter at least weekly in her daughter's home, that the claimant is often sitting back in her recliner, and that she no longer does her hobbies of sewing, crocheting, knitting, or scrapbooking (Tr. 79). She further testified that she sometimes takes her daughter grocery shopping, but has to push the cart and reach on high shelves because the claimant gets tired and cannot reach up high (Tr. 79). At the second hearing, the claimant against testified as to her impairments. She stated that her headaches were no longer constant after the neck surgery, but that the surgery had not relieved her neck pain or arm problems (Tr. 107). As to her urinary

frequency, she testified that she was living with the condition because there was not anything they could do about it (Tr. 111). She testified that she has help at the grocery store because she cannot push the cart herself (Tr. 115). She again testified that she no longer crafts, scrapbooks, knits, sews, or crochets, because she cannot hold the hooks or the needles or do that kind of work (Tr. 117). The claimant's mother testified a second time to much the same information as before, and further stated that the claimant had been born with a kidney problem that contributed to her stress incontinence, and that the claimant exhibited pain and depression by not wanting to leave her home (Tr. 119-120).

In his written opinion, the ALJ summarized the claimant's hearing testimony, her mother's testimony, and much of the medical record, then stated, "After careful consideration of the evidence, the undersigned finds that the claimant's medically determinable impairments could reasonably be expected to cause the alleged symptoms; however, the claimant's statements concerning the intensity, persistence and limiting effects of these symptoms are not credible to the extent they are inconsistent with the above residual functional capacity assessment." He noted that the claimant had stayed focused during Dr. Hansen's evaluation and speculated that her depression and anxiety "should retreat." The ALJ gave great weight to the opinions of Dr. LeGrand and Dr. Hansen and found that the claimant was not disabled (Tr. 138).

As discussed above, the claimant contends that the ALJ failed to properly evaluate her credibility. Deference must be given to an ALJ's credibility determination unless there is an indication that the ALJ misread the medical evidence taken as a whole. *Casias v. Secretary of Health & Human Services,* 933 F.2d 799, 801 (10th Cir. 1991).

Further, an ALJ may disregard a claimant's subjective complaints of pain if unsupported by any clinical findings. *Frey v. Bowen,* 816 F.2d 508, 515 (10th Cir. 1987). But credibility findings "should be closely and affirmatively linked to substantial evidence and not just a conclusion in the guise of findings." *Kepler v. Chater*, 68 F.3d 387, 391 (10th Cir. 1995) [quotation omitted]. A credibility analysis "must contain 'specific reasons' for a credibility finding; the ALJ may not simply 'recite the factors that are described in the regulations.'"[3] *Hardman v. Barnhart*, 362 F.3d 676, 678 (10th Cir. 2004), *quoting* Soc. Sec. Rul. 96-7p, 1996 WL 374186, at *4.

The Court finds that the ALJ failed to properly evaluate the claimant's credibility in accordance with the foregoing standards. First, the conclusory comment that "[t]he claimant's statements concerning the intensity, persistence and limiting effects of these symptoms are not credible to the extent they are inconsistent with the above residual functional capacity assessment" indicates an improper approach to analyzing credibility, *i. e.*, the ALJ apparently formulated the claimant's RFC and then judged her credibility for consistency therewith, when he should have *first* evaluated the claimant's credibility according to the above guidelines and only *then* formulated an appropriate RFC, not the other way around. *See, e. g., Bjornson v. Astrue*, 2012 WL 280736 at *4-5 (7th Cir. Jan. 31, 2012) (slip op.) (in addressing nearly identical language, "[T]he passage implies that ability to work is determined first and is then used to determine the claimant's credibility.

---

[3] The factors to consider in assessing a claimant's credibility are: (1) daily activities; (2) the location, duration, frequency, and intensity of pain or other symptoms; (3) precipitating and aggravating factors; (4) the type, dosage, effectiveness, and side effects of any medication the individual takes or has taken; (5) treatment for pain relief aside from medication; (6) any other measures the claimant uses or has used to relieve pain or other symptoms; (7) any other factors concerning functional limitations. Soc. Sec. Rul. 96-7p at *3, 1996 WL 374186 (July 2, 1996).

That gets things backwards. The administrative law judge based his conclusion that Bjornson can do sedentary work on his determination that she was exaggerating the severity of her headaches. Doubts about credibility were thus critical to his assessment of ability to work, yet the boilerplate implies that the determination of credibility is deferred until ability to work is assessed without regard to credibility, even though it often can't be."). Second, despite mentioning Soc. Sec. Rul. 06-03p and Soc. Sec. R. 96-7p, and acknowledging that a credibility finding must be made, the ALJ wholly failed to perform the requisite analysis in his written opinion (Tr. 24).

The ALJ likewise failed to evaluate the testimony of the claimant's mother at the administrative hearing. Social Security Ruling 06-3p (SSR 06-03p) provides the relevant guidelines for the ALJ to follow in evaluating "other source" opinions from non-medical sources like the claimant's mother, who has not seen the claimant in her professional capacity. *See* Soc. Sec. Rul. 06-03p, 2006 WL 2329939. SSR 06-03p states, in part, that other source opinion evidence should be evaluated by considering the following factors: i) nature and extent of the relationship; ii) whether the evidence is consistent with other evidence; and iii) any other factors that tend to support or refute the evidence. Soc. Sec. Rul. 06-03p, 2006 WL 2329939, at *6. While the ALJ recited parts of the testimony of the claimant's mother, he did not evaluate it in accordance with the factors set out in SSR 06-03p and gave no reasons for either adopting or discrediting her statements in this case. The ALJ's task in evaluating the credibility of lay witness testimony is to determine whether the witness's opinion is sincere or insincere, and then determine what weight, if any, to ascribe to the opinion or testimony. While the ALJ did *mention* the lay witness

statements, he did nothing more than acknowledge that they existed, much less explain his findings with regard to her testimony. *See Kepler*, 68 F.3d at 391 (The ALJ must "explain why the specific evidence relevant to each factor led him to conclude claimant's subjective complaints were not credible.").

Because the ALJ failed to analyze the claimant's credibility in accordance with *Kepler* and *Hardman*, and the claimant's mother's testimony in accordance with SSR 06-03p, the decision of the Commissioner must be reversed and the case remanded to the ALJ for further analysis. If on remand there is any adjustment to the claimant's RFC, the ALJ should re-determine what work, if any, the claimant can perform and ultimately whether she is disabled.

## Conclusion

In summary, the Court finds that correct legal standards were not applied by the ALJ, and the Commissioner's decision is therefore not supported by substantial evidence. Accordingly, the decision of the Commissioner is hereby REVERSED, and the case is REMANDED for further proceedings consistent with this Opinion and Order.

**DATED** this 31st day of March, 2014.

Steven P. Shreder
United States Magistrate Judge
Eastern District of Oklahoma